MICHAEL MEYER, PLAINTIFF IN ERROR, v. SYBILLA KRAUTER, DEFENDANT IN ERROR.

Certain language was used upon the exchange of a horse.  *Held,* under the circumstances, no evidence of a warranty against taking fright at a trolley car.

On error to the Supreme Court.

For the plaintiff in error, *Samuel Kalisch.*

For the defendant in error, *John A. Miller.*

The opinion of the court was delivered by

GARRISON, J.   This is an action on the warranty of a horse.   The alleged breach was that the horse took fright at a trolley car that came up behind it.   There was a verdict for the plaintiff.   The question before us is whether there was any evidence of a warranty of which the subsequent behavior of the horse was a breach.   In other words, was there proof that the horse was warranted not to take fright in the manner in which he did.   The trial court permitted the case to go to the jury with evident hesitancy.   Upon a full consideration of the testimony, we think the verdict should have been for the defendant.   The case presented is this: There had been transactions in horses between the parties for a number of ·

years. Nine years previously the defendant had sold plaintiff a horse and had agreed that if it did not suit it could be returned, and "he would try to make it right and try to find a horse suitable." This horse appears to have been exchanged for another, and that in turn for the horse in suit, and upon each occasion the defendant said, "If it don't suit you, bring it back."

With the second horse a receipt had been given in these words: "Said gray horse is sound, and kind in single and double harness, and five years old." This was in July, 1891. The gray horse proved to be a kicker, and the plaintiff returned him to the defendant, whereupon the following conversation took place between the vendee and the vendor: "Mr. Meyer, here is your horse; I can't use it. 'Why?' he said; I said, 'Because he is a kicker; he done so and so;' Meyer never said a word, but told one of the boys to take this horse away, and said, 'Show him Frank' [the horse in suit]; well, I went up to the stable and he showed me that horse Frank, and I said, 'Frank—well, if that horse is all right, hitch him up—put him in the shafts;' Mr. Meyer said, 'This is your horse—exactly the horse you want—but it costs fifty dollars more;' I said, 'I won't pay any more;' he said, 'Well, that is all right; I don't want any more; if you are satisfied, take the horse home.'" The plaintiff's husband, who gave this testimony, also testified as follows in answer to the question, "Was there anything said about the sort of a horse he was, or the sort of a horse you wanted?" "There was nothing specified what the horse should do and whether it should please; Mr. Meyer sold one nine years ago, to my wife, and he knew she wanted a family horse, and * * * Mr. Meyer agreed that if this horse would not suit us we could return it and he would make it right and try to find a horse suitable."

Giving to this testimony its extreme significance, it might cover vicious conduct such as that shown by the horse that was brought back and was exchanged for the one in suit. But there is nothing capable of affording an indication that

in the sale of any of the horses it was in the minds of the parties to exact or to give a guarantee that the animal should not be frightened by the spectacle of a car drawn without horses, as in the case of a trolley car. It is matter of common knowledge that horses otherwise well broken and kind show signs of terror at the sight of a moving vehicle drawn by an invisible motor. The court will also take judicial notice of the fact that trolley lines had not superseded horse cars at the time the earliest of the sales were made. Whether they were in anything like general use in the city of Newark in 1891 does not appear from the testimony. As there was no express guarantee of any kind, the jury must find, in the language used and in the circumstances surrounding the last exchange of horses, a warranty broad enough or sufficiently special to cover the case of fright at the sight of a moving trolley car. This, from the considerations above mentioned, could not have been intended as to the earlier purchases, and, as the warranty of the last horse did not go beyond those previously given, there was no evidence from which the jury could find such an intention in the minds of the contracting parties.

As the action is on contract and not for deceit, mere knowledge of the purpose for which the horse was wanted is without significance, and in any event it would be without force unless it was also shown that the vendor knew that the horse was unsuitable for the purpose for which he sold him.

The request that a verdict be directed for the defendant was a proper one, and judgment is ordered accordingly.

*For affirmance*—THE CHIEF JUSTICE, ABBETT, DEPUE, DIXON, GARRISON, LIPPINCOTT, MAGIE, REED, VAN SYCKEL, BOGERT, BROWN, KRUEGER, SMITH. 13.

*For reversal*—None.